IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Adela G.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No. 21-cv-00209 |
| v. | ) |
| | ) Magistrate Judge Jantz |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,**[2] | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff, Adela G.'s, application for Supplemental Security Income ("SSI"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1, Compl.; dkt. 18, Pl.'s Brief; dkt 27, Pl.'s Reply] is granted, and Defendant's Motion for Summary Judgment [dkt. 25, Def.'s Mot.; dkt. 26, Def.'s Memo] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

**I. Procedural History**

On November 24, 2014, Plaintiff filed a claim for SSI, alleging disability since September 24, 2014, due to a tumor on her vocal box, diabetes, acid reflux, carpal tunnel, plantar fasciitis, sleep apnea, restless leg syndrome, fallen bladder, and major depression/anxiety. Administrative Record ("R.") 406-09, 463-73. Plaintiff's claim was denied initially on April 8, 2015, and again upon reconsideration on May 6, 2016. R. 248-53; 255-60. Plaintiff requested a hearing, which was held on August 31, 2017, before an Administrative Law Judge ("ALJ"). R. 261, 138-79. Plaintiff personally appeared and testified at the hearing and was represented by counsel. *Id.* Vocational expert ("VE") Brian Harmon also testified. R. 170-78. On January 23, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act ("SSA"). R. 216-40. On September 18, 2018, the Social Security Administration Appeals Council ("Appeals Council") granted Plaintiff's request for review and remanded the case. R. 241-44. Another hearing before the ALJ was held on May 16, 2019. R. 100-37. Plaintiff personally appeared and testified at the hearing and was represented by counsel. *Id.* VE Sara Gibson also testified. R. 127-33. A supplemental hearing before the ALJ was held on January 14, 2020, to allow two medical experts to testify. R. 40-99. Plaintiff personally appeared and testified at the hearing and was represented by counsel. *Id.* Medical experts, Dr. Allen Heinemann PhD and Dr. Gilberto Munoz MD, and VE Julie Bose, testified. R. 45-75, 88-99. On March 3, 2020, the ALJ found Plaintiff to be disabled as of January 14, 2020 due to her advancing age, but found Plaintiff not disabled and denied benefits prior to that date. R. 12-39. The Appeals Council denied Plaintiff's request for review on November 13, 2020, leaving the ALJ's decision as the final decision of the Commissioner. R. 1-6.

## II.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the SSA's five-step sequential evaluation process. R. 19-32. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") since the date of her application. R. 19. At step two, the ALJ concluded that Plaintiff had the following severe impairments: mood disorder variably diagnosed as bipolar disorder and major depressive disorder, post-traumatic stress disorder ("PTSD"), diabetes mellitus, obstructive sleep apnea, degenerative disc disease of the cervical spine, right shoulder tendinopathy, degenerative joint disease of the bilateral knees, and bilateral cubital tunnel syndrome. *Id*. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments (a "Listing"). R. 19-21. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: cannot climb ladders, ropes, or scaffolds; cannot crawl or kneel; can occasionally climb ramps and stairs; can occasionally balance, stoop, and crouch; cannot perform constant repetitive pushing or pulling with the bilateral upper extremities and bilateral lower extremities; cannot reach overhead with the dominant right upper extremity and can frequently reach in all other directions with the bilateral upper extremities; can frequently handle, finger, and feel with the bilateral upper extremities; cannot work around hazards such as unprotected heights and exposed moving mechanical parts; cannot drive a motor vehicle; can only tolerate occasional exposure to vibration and extreme cold; can understand, remember, and carry out simple, routine, and repetitive work instructions; and can adapt to changes and stressors associated with simple routine competitive work activities in a relatively static work environment. R. 21-29. At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. R. 29.

Before step five, the ALJ found that on January 14, 2020, Plaintiff's age category changed to an individual of advanced age. R. 30. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that prior to January 14, 2020, Plaintiff could perform jobs existing in significant numbers in the national economy, but beginning on January 14, 2020, she could not. R. 30-32. This led to a finding that Plaintiff was not disabled under the SSA prior to January 14, 2020, but became disabled on that date. *Id.*

## DISCUSSION

### I. Judicial Review

Under the SSA, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the SSA, an ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any SGA during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v.*

4

*Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Even if reasonable minds could differ as to whether the claimant is disabled, courts

5

will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**II.     Analysis**

Among other arguments, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ erred in his analysis of certain opinion evidence. [Dkt. 18 at 7-11; dkt. 27 at 1-9]. After reviewing the record and the briefs submitted by the Parties, this Court agrees that the ALJ erred in his evaluation of the medical opinions of Dr. Ann Monis, PhD, Dr. Allen Heinemann, PhD, Dr. Kurt Boyenga, PhD and Dr. David Biscardi, PhD. Because these errors warrant remand, the Court does not reach Plaintiff's additional arguments. For the reasons that follow, this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**A.  The ALJ erred in his assessment of the opinion evidence.**

**a.  Impartial Medical Expert Dr. Ann Monis, PhD's opinion evidence**

Following the initial hearing and prior to the supplemental hearing, the ALJ sent a form with interrogatories to psychologist, Dr. Ann Monis, PhD, an impartial medical expert. R. 16, 1754-64. Dr. Monis reviewed the record and completed the form. R. 1777-94. The first part of the form asked about Plaintiff's ability to do "work-related activities on a sustained basis," meaning for "eight hours a day for five days a week, or an equivalent work schedule." In this section, Dr. Monis checked "yes" that Plaintiff had limitations related to her "ability to understand, remember, and carry out instructions" and related to her "ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting." R. 1778-79. The form went on to ask Dr. Monis to rate specific limitations that fell under the umbrella of those general limitations, as "none," "mild," "moderate," "marked," or "extreme." *Id.* She found

6

each of the specific limitations to be "mild" or "moderate." *Id.* She did not find any of the specific limitations to be "marked" or "extreme." *Id.* A later part of the form asked Dr. Monis to rate more general abilities, among them Plaintiff's "understanding, remembering, or applying information" and her "interacting with others."[3] R. 1783. Dr. Monis found Plaintiff to have "marked" limitations for every one of these general abilities. *Id.*

In making his determination, the ALJ gave "little weight" to Dr. Monis' opinion, finding it to be "internally inconsistent," as Dr. Monis concluded Plaintiff "had mild to moderate limitations in [certain] criteria but also had marked limitations in the same categories." R. 28. The ALJ provided no other reasoning for giving "little weight" to Dr. Monis' opinion. *Id.*

Plaintiff argues that Dr. Monis' opinion was not internally inconsistent, and therefore that the ALJ erred in his reasoning behind affording it little weight. [Dkt. 18 at 7-9; dkt. 27 at 2-4]. Defendant's response to this argument is that Dr. Monis made a "scrivener's error" in all of her "marked" ratings and that is why the ALJ found her opinion to be inconsistent and gave it little weight. [Dkt. 26 at 17]. But Defendant offers no support for this assertion beyond stating it as fact. Further, Defendant does not even assert that the *ALJ* believed this was the reason for the perceived inconsistency, or how it could know that this was the ALJ's reason.

The Court's logical and facial reading of Dr. Monis' opinion does not show inconsistency. As Plaintiff correctly points out, Dr. Monis' different ratings were provided in response to different questions. [Dkt. 18 at 7-9; dkt. 27 at 2-4; R. 1777-1794]. It is logical that Plaintiff could have less severe limitations in specific abilities, while having more severe limitations in overarching, general abilities. A combination of several less severe limitations could logically create a more severe

---

[3] The other categories were "concentrating, persisting, or maintaining pace" and "adapting or managing oneself." R. 1783.

limitation in an overarching limitation, for example. Additionally, the "mild" and "moderate" rankings were given in response to a *non-exhaustive* list of specific limitations. R. 1778-79. Other considerations and specific limitations may have gone into Dr. Monis' decision to find the more general limitations to be "marked." From what the Court can see, "there is no unexplained inconsistency here." *Lambert v. Berryhill*, 896 F.3d 768, 774-75 (7th Cir. 2018) (finding that the ALJ's reasons for giving little weight to a medical opinion were "inadequate."). Perhaps the ALJ had other reasons for discrediting Dr. Monis' opinion or had a better explanation of why the opinion was inconsistent, but the Court cannot tell as the ALJ failed to explain himself sufficiently. The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review," and he did not do so here. *Scrogham v. Colvin*, 765 F.3d at 695 (quoting *Briscoe*, 425 F.3d at 351). The ALJ failed to "build an accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d at 837; *Lambert*, 896 F.3d at 774-75.

### b. Impartial Medical Expert Dr. Allen Heinemann, PhD's opinion evidence

Psychologist Dr. Allen Heinemann, PhD, testified at the supplemental hearing held on January 14, 2020, as an impartial medical expert. R. 45-60. Dr. Heinemann's testimony was generally in line with the ALJ's findings and RFC determination, and the ALJ gave his opinion "great weight." R. 45-60, 28. All the ALJ said about his decision to provide Dr. Heinemann's opinion "great weight" was that, "[Dr. Heinemann] provided specific reasons for his opinion that were grounded in the evidence in the case record and the claimant's allegations about her symptoms and limitations." R. 28. The ALJ did not point to any of the "specific reasons" to which he refers, nor did he point to any of the "evidence" or "allegations." *Id.* The Court has no idea how the ALJ reached his conclusion to afford Dr. Heinemann's opinion "great weight," and he certainly gave no indication he considered any of the statutory factors. Again, the ALJ failed to "build an

8

accurate and logical bridge between the evidence and the result." R. 28; *Beardsley*, 758 F.3d at 837; *Lambert*, 896 F.3d at 774-75.

### c. State Agency Mental Consultants Dr. Kurt Boyenga, PhD, and Dr. David Biscardi, PhD

State agency medical consultants, Dr. Kurt Boyenga, PhD, and Dr. David Biscardi, PhD, reviewed the record and made conclusions about Plaintiff's disabilities in April 2015 and May 2016. R. 180-90, 192-214. The ALJ afforded the consultants' opinions "great weight" in making his determination. R. 27. In this part of his decision, the ALJ discussed some of the statutory factors, including examining relationship, treatment relationship, and consistency. *Id.* In doing so, the ALJ did give the Court enough of a glimpse into his reasoning to determine how he reached his conclusion.

However, Plaintiff argues that the ALJ still erred in relying heavily on the consultants' opinions because the ALJ did not include in the RFC determination or in the hypothetical questions posed to the VE all of the limitations that the consultants noted. [Dkt. 18 at 9-10]. The consultants did indeed check boxes that indicated that Plaintiff had several moderate limitations, but the ALJ did not include those limitations in the RFC finding or the hypotheticals posed to the VE. These limitations included: maintaining regular attendance; being punctual; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and completing a normal workday or workweek without interruption from psychologically based symptoms. R. 187-88, 211-12. The ALJ offers no explanation of why he included some of the limitations noted by the consultants, but not these limitations (or others that were left out), especially considering that the ALJ gave the opinions "great weight." R. 27.

Defendant posits that the ALJ left out certain limitations because he appropriately focused on the narrative section of the consultants' forms, rather than the checklist portion. [Dkt. 26 at 14-

9

15]. Defendant puts forth no authority to support the proposition that the ALJ was not required to consider the limitations from the checklist portion of the form, however. Indeed, the 7th Circuit has explicitly rejected this argument. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."). Because the ALJ failed to properly evaluate all of the limitations (or at least explain why he was excluding some of the limitations) put forth in the consultants' opinions (which he gave great weight to), this is another way in which the ALJ failed to "build an accurate and logical bridge between the evidence and the result." R. 28; *Beardsley*, 758 F.3d at 837; *Lambert*, 896 F.3d at 774-75.

## B. The ALJ's errors were not harmless.

Defendant also argues that harmless error applies to this case. [Dkt. 26 at 12]. The Commissioner posits that, "any articulation deficiencies are harmless because this court can predict with great confidence that the result on remand would be the same, since none of the opinions of record indicated plaintiff was incapable of working prior to her established onset date." [*Id.*]. The Court disagrees that the errors discussed above are harmless. An error is harmless only if the Court is convinced that the ALJ would reach the same result on remand. *Lambert*, 896 F.3d at 776. And here, the Court is not convinced the ALJ would reach the same result had he adequately examined and/or explained the opinion evidence discussed above.

For example, if the ALJ had given more weight to Dr. Monis' opinion and less weight to Dr. Heinemann's opinion, he might have found additional and more significant limitations in Plaintiff's RFC, or even found additional impairments. If the ALJ had included all (or even some) of the excluded limitations noted by Dr. Boyenga and Dr. Biscardi in the RFC and/or in the

10

hypotheticals for the VE, he may have found that Plaintiff could not perform work existing in significant numbers in the national economy.

Defendant is correct that the VE identified existing jobs even if Plaintiff was further restricted in her interactions with others to occasional; to superficial interaction with coworkers and supervisors; to performing job duties that did not involve tandem tasks or teamwork; and to no more than incidental public contact. [Dkt. 26 at 17; R. 90]. But if the ALJ had adequately examined and/or explained the opinion evidence, the ALJ may have made these specific limitations more severe in nature, or he may have added additional limitations.

The Court is not determining that the ALJ should have given more or less weight to any of this opinion evidence. It is up to the ALJ to decide what weight to give evidence, but in doing so, the ALJ must "build an accurate and logical bridge between the evidence and the result." R. 28; *Beardsley*, 758 F.3d at 837; *Lambert*, 896 F.3d at 774-75. The ALJ did not do that, and the Court cannot be certain that if he had, the outcome would be the same. The ALJ's errors were not harmless.

11

**CONCLUSION**

Because the errors discussed above warrant remand, the Court does not reach Plaintiff's additional arguments. For the foregoing reasons, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1, Compl.; dkt. 18, Pl.'s Brief; dkt 27, Pl.'s Reply] is granted, and Defendant's Motion for Summary Judgment [dkt. 25, Def.'s Mot.; dkt. 26, Def.'s Memo] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 1/16/24

BETH W. JANTZ
United States Magistrate Judge